**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: May 11 2016**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No.: 14-33814 |
| ) | |
| Charles D. Hamrick, Jr., ) | Chapter 7 |
| ) | |
| Debtor. ) | Adv. Pro. No. 15-3033 |
| ) | |
| Thomas Briggs, ) | Hon. Mary Ann Whipple |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Charles D. Hamrick, Jr., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MEMORANDUM OF DECISION AND ORDER
### GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant's Motion for Summary Judgment as to Second Claim [Doc. # 12], Plaintiff's opposition [Doc. # 13] and Defendant's reply [Doc. # 20]. Defendant is the debtor in the underlying Chapter 7 bankruptcy case. In his complaint, Plaintiff seeks an order denying Defendant a discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(6). Plaintiff also alleges that a debt owed to him by Defendant is nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6). Defendant's motion addresses only Plaintiff's objection to discharge under § 727(a)(2).

The district court has jurisdiction over Defendant's underlying Chapter 7 bankruptcy case and all

civil proceedings in it arising under Title 11, including this adversary proceeding. 28 U.S.C. § 1334(a) and (b). The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a) and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. Proceedings to determine objections to discharge are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(J). For the reasons that follow, Defendant's motion will be granted.

## FACTUAL BACKGROUND

The following facts are not in dispute. GLA Water Management Company ("GLA") is an Ohio corporation formed in 1992 by Plaintiff Thomas Briggs and Defendant. [Doc. # 15, attached Def. Aff., ¶ 4]. Defendant owns fifty-four percent of the shares of stock in GLA and Briggs owns forty-six percent. [*Id.* at ¶¶ 2, 4]. Defendant is the president of GLA and performs services as a water technologist. [Doc. # 1, Complaint, ¶ 10; Doc. # 6, Answer, ¶ 4]. His wife served as a secretary and his son worked as a service technician for GLA. [*Id.*]. GLA has entered into numerous service contracts over the years, typically for the purpose of providing consulting and boiler water treatment programs. [Def. Aff., ¶¶ 5-6 and attached Ex. A2]. The typical service contract, signed by Defendant as district manager of GLA, provided that the customer had the option to cancel the contract due to noncompliance with the contract. [*Id.* at 6 and attached Ex. A2, p.2].

Briggs owned the building that GLA occupied and held a promissory note owed to him by Defendant. [*Id.* at 8-9]. Eventually, GLA experienced financial difficulties. In 2011, Briggs caused GLA to be evicted from his building and obtained a cognovit judgment against Defendant in state court in the amount of $126,249.82. [*Id.;* Proof of Claim No. 6-1, p. 3]. Briggs also commenced an action against both GLA and Defendant in state court for breach of a lease agreement, to which GLA and Defendant counterclaimed for breach of a non-compete agreement. [Def. Aff., ¶ 10; Proof of Claim No. 6-1, p. 6]. A jury returned a verdict in favor of Briggs on his breach of the lease agreement in the amount of $118,750 and in favor of GLA on its breach of the non-compete agreement in the amount of $353,500, and judgment in the off-set amount of $234,250 was entered in favor of GLA. [Def. Aff., ¶ 11; Proof of Claim No. 6-1, p. 7]. However, in April 2014 the Ohio Sixth District Court of Appeals reversed the lower court's judgment in favor of GLA. On October 14, 2014, the Ohio Supreme Court declined to accept jurisdiction of GLA's appeal. [Def. Aff., ¶¶ 11,14; Proof of Claim No. 6-1, pp. 9-10].

Defendant underwent surgery in 2013 for colon cancer and, at that time, had made a decision to "start looking at a possible retirement or lessening involvement with work." [Def. Aff., ¶ 12]. After the

judgment in favor of GLA was reversed in 2014, and after being advised that Briggs could seize his shares of stock in GLA as Briggs had told him he would do, Defendant decided that he was no longer going to work for GLA. [*Id.* at 15]. At his deposition, Defendant testified that he realized that he was not healthy enough to want to continue fighting for the company and so decided he "was just going to let her flop." [Doc. # 13, Ex. 1, p. 28]. When asked to explain what he meant by letting "her flop," Defendant explained:

> I had no more interest. I was tired of fighting. So we just went through the normal procedures of making sure that the vendors were paid, the money that came in was collected, and you know, it got to the point because we started losing business because of all this legal stuff based on GLA Water over in Hiram coming in and taking accounts and that because they knew we were hurting with the lawsuit going on, and other companies in the area, because there's like 50-some water treatment companies in this area now. I got tired of fighting it. I figured it was going down. We looked at the financials over the last few years, been showing less and less profit. So it was time, I figured, I'm done.

[*Id.* at 28-29].

When Defendant informed his wife and son of his decision to wind down GLA, they decided to form their own company and, after several family meetings discussing its formation that included Defendant, created Eagle Engineering Water Technology, LLC ("Eagle Engineering"). [Def. Aff., ¶ 16; Doc. # 13, Ex. 7, p. 34-35]. Eagle Engineering is in the same line of business as GLA. [Doc. # 13, Ex. 7, p. 41]. Defendant's wife and son have ownership interests in the company of eighty percent and twenty percent, respectively. [*Id.* at 41-42]. Eagle Engineering uses the same P.O. box address as GLA used and, at least for some period of time, used the same telephone number. [Doc. # 13, Ex. 1, p. 109-11].

Defendant began informing customers of GLA that he would no longer be working at GLA and that, since GLA could no longer service their needs, their contract allowed them to go elsewhere. [*Id.* at 17-18]. Defendant told GLA customers that his wife and son were creating a new company called Eagle Engineering and that if they wanted someone to service them, they should talk to Eagle Engineering. [Doc. # 13, Ex. 1, p. 53-54]. Eagle Engineering began servicing at least some of GLA's customers, including one of its larger customers. [*Id.* at 67-81]. However, Defendant had no control over whether any GLA customer chose Eagle Engineering or not. [Def. Aff, ¶ 18].

At his deposition, Defendant was asked whether the fact that he stopped working for GLA had a substantially negative financial impact on the company. Defendant responded, "I guess you could assume that due to the fact that, yes, as I said, I was GLA." [Doc. # 13, Ex. 1, p. 134]. December 2014 was the last month that GLA operated. [*Id.*]. GLA continued to pay the salaries of Defendant's wife and his son through December and paid Christmas bonuses as well to Defendant and to his wife and son. [*Id.* at 63-64; Ex. 7,

3

p. 65]. Defendant explained that while his wife and son had started their own business, there was still work to be done for GLA and his son was still providing services to clients to whom GLA had commitments. [*Id.*, Ex. 1, pp. 29, 64].

Defendant testified at his deposition that he began working for Eagle Engineering because his wife and son wanted him there as a consultant and a representative for them. [Doc. # 13, Ex. 1, p. 28]. Although Eagle Engineering gave him the "honorary title of President," he works part-time, is not responsible for day-to-day operations, does not sign checks, or have any ownership interest in the company. [*Id.* at 20]. Defendant was not working for GLA under a written employment contract and neither he nor his wife or son ever signed a non-compete agreement with GLA. [*Id.* at 23]. In November 2014, Defendant and his son attended the annual convention in Texas for the Association of Water Technologies, of which he is a member and past president. [Doc. # 13, Ex. 1, pp. 25, 27]. The member list at the convention listed Defendant as representing Eagle Engineering only. [*Id.* at 27]. While Eagle Engineering paid for Defendant and his son's hotel and food and beverage expenses, GLA paid for their airfare. [*Id.* at 26].

On October 17, 2014, Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code. [Case No. 14-33814]. Included in his bankruptcy schedules is his fifty-four percent shareholder interest in GLA, which he valued at zero. The court granted Plaintiff an extension of time to file a complaint objecting to discharge until April 3, 2015. [Case No. 14-33814, Doc. # 27]. Plaintiff's complaint was timely filed on April 2, 2015. His second claim for relief seeks an order denying Defendant a discharge in his Chapter 7 case pursuant to 11 U.S.C. § 727(a)(2)(A) and (B).

## LAW AND ANALYSIS

**I. Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to issues on which the nonmoving party bears the burden of proof, the burden

4

on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

**II. 11 U.S.C. § 727(a)(2)**

Plaintiff objects to Defendant's Chapter 7 discharge pursuant to § 727(a)(2)(A) and (B). Consistent with the fresh start policy underlying the Bankruptcy Code, the provisions of § 727(a) are to be construed strictly against the objecting party and liberally in favor of the debtor. *Risk v. Hunter (In re Risk)*, 535 B.R. 203, 220 (Bankr. N.D. Ohio 2015) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)). The party objecting to the discharge has the burden of proving by a preponderance of the evidence that the exception applies. *Keeney*, 227 F.3d at 683.

Section 727(a)(2) provides that:

(a) The court shall grant the debtor a discharge unless–

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed–
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition[.]

This section requires a plaintiff to prove the following two elements: 1) a disposition of property; and 2) "'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *Id.* (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). In addition, under § 727(a)(2)(A), the property disposed of must be property of the debtor and the disposition must have occurred within one year before the date the petition was filed. Under § 727(a)(2)(B), the property disposed of must be property of the bankruptcy estate and the disposition must therefore have occurred after the filing of the petition.

Defendant contends that there is no evidence that his property or property of the bankruptcy estate was transferred, removed, destroyed or concealed. For the reasons that follow, the court agrees. As the moving party who does not bear the burden of proof, Defendant has met his burden under *Celotex Corp.*

5

of pointing out that there is an absence of evidence to support Plaintiff's claim.

Initially, the court notes that the transfer of property of GLA, to the extent such occurred, is not a transfer within the contemplation of § 727(a)(2) as it is not a transfer of "property of the debtor" or "property of the estate." "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . . ." *Id.* at 475. Courts have persuasively applied this tenet when interpreting "property of the debtor" in the context of § 727(a)(2)(A) and have rejected the argument that the transfer of assets of a corporation could be a basis for the denial of discharge to a shareholder. *See, e.g., Mcorp Mgmt. Solutions, Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir. 1990) (explaining that "property of the debtor" is not the same as property in which the debtor has a derivative interest and finding that "Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest"); *Northeast Nebraska Econ. Dev. District v. Wagner (In re Wagner)*, 305 B.R. 472, 475 (B.A.P. 8th Cir. 2004) (transfer of property of debtor's closely held company was not transfer of property of the debtor under § 727(a)(2)); *Hulsing Hotels Tenn., Inc. v. Steffner (In re Steffner)*, 479 B.R. 746, 761 (Bankr. E.D. Tenn. 2012) (holding that property of a corporation or limited liability company belongs to that entity, not the owners of the entity, "even if the corporation has only one shareholder or member." ). *But see Grant v. Benjamin (In re Benjamin)*, 210 B.R. 203, 209 (Bankr. M.D. Fla. 1997) (stating without discussion or citation to any authority that corporate property transferred was property of the debtor). Relying on the plain language of the statute, courts have recognized that section 727(a)(2) is concerned with the disposition of property in which the debtor has a "direct proprietary interest." *See Thurman*, 901 F.2d at 841; *BankUnited, N.A. v. Lehmann (In re Lehmann)*, 511 B.R. 729, 735 (Bankr. M.D. Pa. 2014) .

Nevertheless, according to Plaintiff, Defendant reduced the value of the GLA stock owned by him by assigning GLA contracts to Eagle Engineering and by continuing to pay his son and wife through December 2014. Plaintiff thus contends that the basis of his § 727(a)(2) claim is that, within one year prior to filing his petition, Defendant "destroyed" the GLA stock owned by him. While it is true that the GLA stock constitutes "property of the debtor" and, after filing his petition, "property of the estate," Plaintiff's "destruction of stock" argument, which relies on alleged transfers of corporate property, is simply an end run around the basic tenet set forth above that property of a corporation, even where wholly owned by the debtor, is not property of the debtor. Courts have thus found, and this court concurs, that the transfer of property of a corporation owned by the debtor, which has an incidental effect upon the debtor's assets, *i.e.*

6

resulting in a decrease in the value of the shares of the corporation, does not satisfy the requirements of § 727(a)(2). *See, Thurman*, 901 F.2d at 841; *Lehmann*, 511 B.R. at 735; *BPS Guard Servs. v. Woodhead*, 172 B.R. 628, 633 (Bankr. D. Neb. 1994); *Trivedi v. Levine*, Adv. No. 14 A 00461, 2014 WL 7187007, *2, 2014 Bankr. LEXIS 5161, *4-*7 (Bankr. N.D. Ill. Dec. 16, 2014).

Nevertheless, even if Plaintiff's "destruction of stock" argument is accepted, there is no evidence that Defendant transferred GLA's service contracts. Neither Defendant nor his son were under any obligation to continue working for GLA and, as Plaintiff concedes, they were free to pursue other opportunities. Although the evidence shows that Defendant informed GLA customers that he would not be working at GLA and that, if they wanted someone to service them, they should talk to Eagle Engineering, there is no evidence that he controlled whether any GLA customer chose Eagle Engineering or not. And to the extent that the Defendant's decision to stop working for GLA had a financial impact on the value of the stock, that decision cannot be the basis of a § 727(a)(2) claim since, as indicated above, Defendant was under no obligation to continue his employment at GLA.

For all of the foregoing reasons, the court finds that Plaintiff has failed to demonstrate the existence of a genuine issue of material fact for trial with respect to his § 727(a)(2) claim.

**THEREFORE**, good cause appearing,

**IT IS ORDERED** that Defendant's motion for summary judgment as to Plaintiff's second claim for relief, brought under 11 U.S.C. § 727(a)(2), [Doc. # 12], be, and hereby is, **GRANTED.**

###